**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| ENVTECH, INC., | ) | 3:11-cv-00523-HDM-WGC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| TALMOR SUCHARD, SENTRO TECHNOLOGIES, LTD, and SENTRO TECHNOLOGIES, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff EnvTech ("EnvTech") has filed an amended complaint asserting multiple claims against defendants Talmor Suchard ("Suchard"), Sentro Technologies LTD, and Sentro Technologies, LLC ("Sentro Nevada"). Plaintiff has also filed a motion for preliminary injunction (#47), proposed interim injunctive relief (#73), and on October 31, 2012, a "Request for Urgent Entry of Injunctive Relief" (#78). On October 31, 2012, the court entered a temporary restraining order enjoining and restraining Suchard from

1

sending out or transmitting any letters or other forms of communication to oil refineries disclosing EnvTech's proprietary chemical blends and cleaning processes, or other confidential, proprietary, and trade secret information belonging to EnvTech. The court thereafter conducted a telephonic hearing on the Request for immediate injunctive relief (#78) and issued its order granting interim preliminary injunctive relief pending a full hearing on the motion for preliminary injunction (#83).

**Factual Background**

EnvTech claims to be the "world's primary provider" of chemical cleaning solutions to oil and gas refineries. Controlling 80 percent of the market for cleaning and neutralization of "HF Alkylation" units – accounting for 40-60 percent of its business – and with a "significant presence in other types of unit cleaning," EnvTech bases its success on its proprietary chemical formula and processes that it claims no other company has been able to duplicate. HF Alkylation units are a small part of the overall refinery process, and they are not in all refineries.

Suchard is an Israeli citizen and former EnvTech employee. Prior to working for EnvTech from 2005 to 2011, Suchard spent seven years in the oil and gas refinery business.

Suchard's job responsibilities at EnvTech included visiting clients, pitching work, and overseeing the cleaning processes, and he had access to EnvTech's proprietary chemical formula and cleaning process. Suchard asserts that the vast majority of his time was spent in chemical cleaning of HF Alkylation units. While Suchard admits he cleaned other types of units, he claims he did so only a few times and was not in charge of those projects. EnvTech,

2

1  however, produced evidence demonstrating that Suchard was also
2  involved in drafting proposals for decontamination of heat
3  exchangers, vapor phase cleaning unrelated to HF Alkylation, and
4  cleaning of vacuum towers, crude oil units, crude oil exchangers,
5  desalters, FCC Units, and heavy oil units. (Pl. Reply to Mot.
6  Prelim. Inj. Exs. 4, 7-8; Suchard Decl. in Support of Removal ¶ 3).
7       As part of his employment, Suchard signed an at-will
8  employment agreement ("EA") and a "Trade Secrets and
9  Non-Competition Agreement" ("TSNCA").  The agreements required
10 Suchard to maintain the confidentiality of EnvTech's trade secrets
11 and proprietary information, to not compete against it, and to not
12 solicit EnvTech clients.
13      Suchard was terminated from EnvTech in May 2011.  While still
14 employed by EnvTech, and after his termination up to the present
15 time, Suchard allegedly used and is using EnvTech's confidential
16 and proprietary information to compete against it, including
17 soliciting EnvTech's clients and creating two competing businesses.
18 Suchard does not deny that he has created oil and refinery cleaning
19 businesses, but denies that they compete with EnvTech, denies that
20 he has done any work for EnvTech clients, and denies using any of
21 EnvTech's confidential and trade secret information.

**Preliminary Injunction Standard**

23      "An injunction is a matter of equitable discretion and is an
24 extraordinary remedy that may only be awarded upon a clear showing
25 that the plaintiff is entitled to such relief."  *Earth Island Inst.*
26 *v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation
27 marks omitted).
28      To obtain a preliminary injunction, EnvTech must show: (1) it

3

will probably prevail on the merits; (2) it will likely suffer irreparable injury if relief is denied; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).

Alternatively, an injunction may issue under the "sliding scale" approach if there are serious questions going to the merits and the balance of hardships tips sharply in EnvTech's favor, so long as EnvTech still shows a likelihood of irreparable injury and that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "Serious questions are those which cannot be resolved one way or the other at the hearing on the injunction." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 926-27 (9th Cir. 2003) (internal quotation marks omitted) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Marcos*, 862 F.2d at 1362.

**I. Likelihood of Success/Serious Questions**

While employed by EnvTech, Suchard signed agreements to not disclose EnvTech's confidential, proprietary, and trade secret information, (TSNCA §§ 1.3, 1.4, 1.6, 1.7; EA ¶ 18), and to not "engage or participate in any competitive activity relating to the subject matter of his ... hiring by" EnvTech, (TSNCA § 1.8). A review of the record indicates that these agreements are likely enforceable. At this juncture, Suchard has failed to establish that the EA and TSNCA were signed in bad faith to avoid application

of California law, that Nevada lacks a substantial relationship to the agreements, or that the agreements are contrary to Nevada public policy.  Applying Nevada law, as selected by the agreements, the court concludes the noncompete and trade secret provisions contained in the TSNCA are likely enforceable, and the noncompete, trade secret, and nonsolicitation agreements in the EA are likely enforceable if modified as follows.  The EA noncompete provision barring Suchard from providing any service to any EnvTech client is too broad to be enforceable; the scope must be limited to acts that compete with EnvTech in a manner related to the work Suchard performed for EnvTech.  The nonsolicitation provision must be modified in a similar way, to prevent Suchard from soliciting EnvTech business associates to do business related to work Suchard performed for EnvTech.  Finally, the duration of the EA trade secret provision must be limited to a definable term.

The record also indicates that Suchard is likely violating the enforceable agreements.  The evidence establishes that, both during and after his employment with EnvTech, Suchard solicited EnvTech clients and associates with respect to services that compete with EnvTech and relate to work Suchard performed for EnvTech.  Suchard does not deny that he has established entities that engage in the oil and gas refinery cleaning business, though he denies that they directly compete with EnvTech because they do not engage in cleaning of HF Alkylation units and because his technologies are different from EnvTech's.  Whether Suchard has engaged in cleaning and decontamination of HF Alkylation units – and there is evidence in the record that he has at least attempted to do so – is not particularly relevant.  Competition with EnvTech can encompass more

than just cleaning HF Alkylation units, and Suchard has clearly engaged or attempted to engage in other types of cleaning, including heavy oil and vapor phase, which he was involved in while employed by EnvTech and which competes with EnvTech.  Similarly, competition with EnvTech is not limited to competition using the same technologies and processes.  Even assuming Suchard's technologies differ from EnvTech's, he is competing with EnvTech if he attempts to clean and/or decontaminate the same units in oil and gas refineries that EnvTech cleans and decontaminates.

Recent filings by EnvTech present evidence demonstrating threats by Suchard to immediately disclose confidential, proprietary and trade secret information belonging to EnvTech to at least 100 refineries.  In addition, the record contains persuasive evidence that Suchard has engaged and continues to engage in competitive activities relating to the subject matter of his hiring – that is, Suchard is competing or attempting to compete with EnvTech in the cleaning of oil and gas refinery units. Significantly, while employed by EnvTech, he cleaned and/or drafted proposals for cleaning for several different types of units. Accordingly, pending further order of the court, the court concludes that EnvTech has shown at least serious questions going to, if not a likelihood of success on, the merits of its claim that Suchard is violating his employment agreements.

**II. Likelihood of Irreparable Harm**

The disclosure of confidential trade secret information would cause immediate and irreparable harm to EnvTech.  Further, given the evidence of Suchard's conduct, the court also concludes that Suchard's competitive activities threaten to undermine EnvTech's

6

goodwill and market share and would also therefore result in irreparable harm.

### III. Balance of Hardships

EnvTech's potential loss of confidential, proprietary, and trade secret information and of market share greatly outweighs Suchard's inability to work in the field of oil and gas refinery cleaning insofar as it relates to work he performed for EnvTech, particularly in light of the most recent filing reflecting efforts by Suchard to disclose confidential, proprietary and trade secret information that belongs to EnvTech. Accordingly, the court finds the balance of hardships tips in EnvTech's favor.

### IV. Public Interest

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). The nonparties potentially impacted by an injunction would be clients and potential clients of EnvTech and Suchard. Those clients would have fewer options for chemical cleaning and may have to pay more for such services. On the other hand, the businesses that provide chemical cleaning services exist and are able to thrive in part because of trade secret protection. Failure to protect trade secrets would greatly undermine EnvTech's business, would discourage innovation in the field, and could eventually reduce the number of businesses engaged in the cleaning of oil and gas refineries. On balance, the court concludes that the public interest favors the protection of EnvTech's confidential and trade secret information and therefore favors the issuance of a preliminary injunction.

**Conclusion**

EnvTech has shown a likelihood of success on, or at the very least serious questions going to, the merits of its contractual claims, that it faces likely irreparable harm in the absence of an injunction, that the balance of hardships tips sharply in its favor, and that the public interest favors an injunction. Accordingly, a preliminary injunction is properly issued pending further order of the court. Accordingly, pursuant to Federal Rule of Civil Procedure 65 the court hereby reconfirms its preliminary injunction of November 1, 2012 as herein modified, and the defendant and the defendant's agents, assigns, and affiliates are restrained and enjoined from the following:

1. Using in any way, or disclosing to anyone, any of EnvTech's confidential and proprietary information and trade secrets, including but not limited to EnvTech's strategic planning information, the chemical formulas it has developed to service its customers, identities or information on its customers including attributes and preferences, and the unique processes and procedures EnvTech has developed to service its customers;
2. Sending out or transmitting any letters or other forms of communication to oil refineries stating that EnvTech's chemicals contain unspecified carcinogens;
3. Holding himself out to anyone as affiliated with EnvTech or use EnvTech's name, trademarks, literature or documents for any purpose whatsoever;
4. Engaging in any type of chemical cleaning business related to activities Suchard participated in while

employed by EnvTech, for a period not to exceed two years or until further order of the court, including:

    a. HF Alkylation Unit Cleaning;

    b. Decontamination of Heat Exchangers;

    c. Cleaning of Vacuum Towers;

    d. Cleaning of Crude Oil Units;

    e. Cleaning of Crude Oil Exchangers;

    f. Cleaning of Desalters;

    g. Cleaning of FCC Units;

    h. Vapor Phase Cleaning;

    i. Cleaning of Heavy Oil Units; and

5. Soliciting or encouraging any person or entity with whom EnvTech has done business while Suchard was employed with EnvTech to cease doing business with EnvTech or to do any business with defendants, that is the business described in paragraph 4 above.

The bond previously posted by EnvTech shall apply to this preliminary injunction and is increased to $50,000.

**IT IS SO ORDERED.**

DATED: This 29th day of November, 2012.

*Howard D. McKibben*
_____
UNITED STATES DISTRICT JUDGE