1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

9

| | | |
|---|---|---|
| ENVTECH, INC., a Nevada Corporation, | ) | 3:11-CV-00523-HDM-WGC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| TALMOR SUCHARD et al., | ) | |
| Defendants. | ) | |

15        Before the court is plaintiff EnvTech, Inc.'s (EnvTech) Motion to Compel Discovery.

16  (Doc. # 125.)[1] The motion is brought against defendant Talmor Suchard (Suchard), who has filed an

17  opposition. (Doc. # 133.) EnvTech filed a reply. (Doc. # 136.)

18        A hearing on the motion was conducted on September 5, 2013. (*See* Minutes at Doc. # 137.)

19  After hearing argument from counsel, the court granted EnvTech's motion, overruled Suchard's

20  objections as to the control argument, as well as his boilerplate objections, and ordered Suchard to

21  produce documents in his possession that are not otherwise privileged. (*Id.*) In addition, the court ordered

22  that if Suchard continues to assert that the documents requested are not under his control, he must

23  provide a declaration stating that he does not have access to documents responsive to EnvTech's

24  requests, and documenting the efforts made to encourage Sentro Israel to produce responsive documents.

25  (*Id.*) The court gave Suchard up to and including September 25, 2013, to produce supplemental

26

27

28

_____

[1]Refers to court's docket number.

1 responses to EnvTech's discovery. (*Id*.)[2] This order is entered to clarify and confirm the court's position

2 with regard to Suchard's objections to EnvTech's discovery.

3 **I. BACKGROUND**

4      In this action, EnvTech alleges that Suchard executed an employment agreement and trade secret

5 and non-compete agreement with it, whereby Suchard agreed to work exclusively for EnvTech's benefit

6 and to protect its confidential and proprietary information and trade secrets. EnvTech contends that

7 Suchard breached these agreements by working on behalf of other companies, soliciting business from

8 EnvTech's clients on his own behalf and on behalf of other companies, and by using EnvTech's time,

9 equipment, resources and proprietary information to further his own financial interests. In addition,

10 EnvTech alleges that after he was terminated Suchard continued to compete directly with it through two

11 newly formed entities, Sentro Technologies, Ltd. (Sentro Israel) and Sentro Technologies, LLC (Sentro

12 Nevada). Suchard is alleged to be the owner and director of these two entities.

13      Sentro Israel is a defendant in this action. On December 13, 2012, it moved to quash service of

14 process based on alleged lack of jurisdiction over it in Nevada, but the court denied this motion. (*See*

15 Docs. # 94, # 109.) The court allowed EnvTech to conduct jurisdictional discovery (*id*.), which EnvTech

16 did, but Sentro Israel did not respond (*see* Doc. # 125 at 8). On March 8, 2013, Suchard's counsel filed

17 a notice of withdrawal of the special appearance and motion to quash previously filed on Sentro Israel's

18 behalf, and indicated it would not contest the case in Nevada, and that it terminated its representation

19 agreement with counsel. (*See* Docs. # 117, # 120.) The court ordered Sentro Israel to respond to

20 EnvTech's First Amended Complaint (Doc. # 120), which it failed to do, and on June 17, 2013, EnvTech

21 obtained a default against Sentro Israel (Doc. # 124).

22      On September 13, 2012, EnvTech propounded requests for production of documents on Suchard.

23

24

25

26      [2]The court also extended the discovery cutoff to February 14, 2014, and directed the parties to submit a second

27 amended scheduling order reflecting all relevant dates. (Doc. # 137 at 2.) The court then provisionally granted EnvTech's motion for issuance of letters rogatory. (*Id*.) Finally, the court set another status conference for October 2, 2013, at 1:30 p.m.,

28 requiring Mr. Suchard to appear in person. (*Id*.)

2

(Doc. # 125 at 2.) It also propounded interrogatories.[3] The discovery sought documents and information, which included that purportedly belonging to Sentro Israel to which Suchard has access, and Suchard has not produced the documents. Suchard served his responses and objections on December 5, 2012 (two weeks past the deadline set by the court). (*See* Doc. # 84.) The parties met and conferred and were able to resolve many discovery disputes, but according to EnvTech, Suchard has refused to produce any documents that allegedly belong to Sentro Israel. (*Id*. at 9.) EnvTech gave Suchard additional time to consider the requests and communicate with Sentro Israel, but Surchard did not provide the materials; instead, he provided EnvTech with a document titled a "Manager Decision," written by his partner which purports to prohibit Suchard from producing the documents. (*Id*.)

The parties engaged in another meet and confer session where EnvTech gave Suchard an extension up to and including June 5, 2013 and then June 12, 2013, to produce additional documents. (*Id*.) Suchard has not produced any further documents, and argues that he cannot produce them because he has no controlling interest in Sentro Israel and Sentro Israel has threatened to sue him if he produces the documents. (*Id*. at 10.)

EnvTech argues that while Suchard admits to owning half of Sentro Israel and that he has access to the documents, he maintains that he lacks permission to disclose the information. (*Id*. at 2, 11.) Thus, EnvTech seeks to compel disclosure of the documents on the basis that under United States and Israeli law, as an owner and director of Sentro Israel, Suchard has sufficient control over the documents that they are required to be produced. (*Id*. at 2, 11-19.)

The specific requests for production of documents at issue are request numbers 8, 19, 25, 27, 31, 37, 41, 42, 49, 58, and 59. (*Id*. at 19-28.) The specific interrogatories at issue are numbers 9, 10, and 14. (*Id*. at 28-31.) The relevant text of the discovery requests as well as Suchard's responses and objections can be found in EnvTech's motion at pages nineteen through thirty-one.

Suchard did not file a motion for protective order with respect to the discovery to which Suchard asserted objections. In addition, as the court pointed out at the hearing on this motion, Suchard did not

---

[3]While the motion's conclusion only asks for an order compelling responses to the requests for production, it appears, and the court construes EnvTech's motion as also being directed toward certain deficiencies with respect to Suchard's responses to its interrogatories.

produce a declaration indicating that he has formally requested documents from Sentro Israel or that he, himself, does not possess documents responsive to EnvTech's requests. (*See* Doc. # 137.)

The court will address the substance of Suchard's objections to ENVTECH's discovery.

## II. DISCUSSION

### A. Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence...

Fed. R. Civ. P. 26(b)(1).

Rule 34, which governs a request for production of documents, provides that a party may serve a request:

> [T]o produce and permit the requesting party...to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form...

Fed. R. Civ. P. 34(a)(1)(A). The request "must describe with reasonable particularity each item or category of items to be inspected" and "must specify a reasonable time, place and manner for the inspection and for performing the related acts[.]" Fed. R. Civ. P. 34(b)(1)(A)-(B). Responses must be made within thirty days after the requests are served. Fed. R. Civ. P. 34(b)(2)(A). "[T]he response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

Rule 33 of the Federal Rules of Civil Procedure allows a party to serve written interrogatories, which must be responded to within thirty days of the date they are served. Fed. R. Civ. P. 33(a), (b). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The grounds for objecting to an

4

interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). In addition, a "person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5).

Rule 37 of the Federal Rules of Civil Procedure authorizes a party to file a motion to compel discovery, provided it includes a certification that good faith efforts were made to resolve the dispute before seeking court intervention. Fed. R. Civ. P. 37(a)(1). Such a motion may be made under circumstances including where "a party fails to answer an interrogatory submitted under Rule 33" and where "a party fails to respond that inspection will be permitted—or fails to permit inspection —as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). Moreover, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The court granted EnvTech's motion at the September 5, 2013 hearing. It will now expand on its discussion concerning the objections asserted by Suchard which were overruled by the court.

**B. Objections on the Grounds the Requests are Vague, Uncertain and Not Specific and Will Impose an Undue Burden on Suchard and His Counsel**

Each of the responses to the requests for production which are the subject of EnvTech's motion to compel contain identical or substantially similar objections that the requests are "vague, uncertain and not specific" without explaining the objection. (*See, e.g.,* Doc. # 125 at 19-20, response to request for production no. 8.) Some responses to the requests at issue contain this language, but also include the assertion, without any substantiation, that responding to the request "imposes an unreasonable burden upon Defendant and his counsel." (*See, e.g.,* Doc. # 125 at 22, response to request for production no. 27.)

First, it is well-settled that a party objecting to discovery must stated its objection with specificity. Fed. R. Civ. P. 34(b)(2)(c).

Second, boilerplate objections are disfavored, "especially when a party fails to submit any evidentiary declarations supporting such declarations." *A. Farber and Partners, Inc. v. Garber*, 234

1   F.R.D. 186, 188 (C.D. Cal. 2006) (internal citations and quotation marks omitted).

2       Third, upon reviewing the specific requests, the court has determined that they are not, as

3   Suchard asserts, vague or uncertain. Nor do they lack specificity. Here, EnvTech's requests are

4   specifically tailored to issues germane to its case. Further, these objections do not justify a refusal to

5   provide *any* documentation.

6       Finally, because Suchard did not explain how responding to these requests constitutes an

7   unreasonable burden, the court likewise overrules the objection that the requests are overly

8   burdensome. *See, e.g., A. Farber*, 234 F.R.D. at 188. Even if responding fully and completely to the

9   request might present an undue burden, that party is still under an obligation to produce that

10  documentation which might be characterized as being readily available.  Instead, Suchard has

11  produced nothing.[4]

12  **C. Objections that the Interrogatories are Not Reasonably Calculated to Lead to the Discovery**

13  **of Admissible Evidence and that Responding to them Imposes an Unreasonable Burden on**

14  **Suchard and his Counsel**

15      The three interrogatories propounded by EnvTech and Suchard's responses (numbers 9, 10,

16  and 14), including objections, are set forth in EnvTech's motion. (Doc. # 125 at 28-30.)  One of the

17  objections asserted by Suchard to each of the interrogatories is that the information sought is "not

18  reasonably calculated to lead to the discovery of admissible evidence." [5]

19      The burden is on the objecting party to explain the objection lodged to an interrogatory. *See*

20  Fed. R. Civ. P. 33(b)(4) ("[t]he grounds for objecting to an interrogatory *must be stated with*

21  *specificity*" (emphasis added)).

22      Suchard provides no explanation for his relevancy objection; instead, a review of the

23

24      [4]  As discussed herein, while Suchard might have a colorable reason for not producing those
     company documents to which he has allegedly been denied access, that would provide no justification
25   for no producing those documents which he may have in his personal possession.

26      [5] While Suchard's responses state that he "objects to *Request for Production No.*," the court will
     presume he meant to state he was objecting to EnvTech's interrogatories. (*See* Doc. # 125-3 at 5-22
27   (emphasis added).)

28

interrogatories reveals that they are specifically tailored to the gravamen of EnvTech's claims for relief against Suchard. Accordingly, Suchard's relevancy objection asserted in connection with EnvTech's interrogatory numbers nine, ten and fourteen, is overruled. *See, e.g., A. Farber*, 234 F.R.D. at 188 ("boilerplate relevancy objections, without setting forth any explanation of why the requested documents are not relevant, are improper").

The other objection asserted by Suchard in his answers to these interrogatories is that the interrogatories impose an unreasonable burden on him and his counsel. Again, Suchard provides no explanation as to how these interrogatories are unduly burdensome. Thus, the objection is overruled, as it was with respect to the requests for production of documents. *See, e.g., A. Farber*, 234 F.R.D. at 188.

While Suchard provided some responsive information to interrogatory number 9 (Doc. # 125-3 at 13-15), the court finds that the response is incomplete and must be supplemented. To the extent he provided further responsive information to interrogatory number 10, the response is sufficient. No responsive information was provided as to interrogatory number 14, and Suchard must provide a response.

Finally, Suchard must provide verified responses to the interrogatories. Fed. R. Civ. P. 33(b)(5).

**D. Suchard's Objection that the Requested Documents Are Not in His Possession, Custody or Control**

Suchard claims that he does not have "control" over the Sentro Israel documentation EnvTech has requested. In that regard, although no declaration accompanied his opposition, Suchard claims he cannot secure the requested documents from Sentro Israel.

As stated above, parties are required to produce documents that are in their "possession, custody or control." Rule 34(a)(1). "[A] party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *A. Farber*, 234 F.R.D. at 189 (internal quotations and citations omitted). A reasonable inquiry requires, "at a minimum, a reasonable procedure to distribute

7

discovery requests to all employees and agents of the [party] potentially possessing responsive information, and to account for the collection and subsequent production of the information to [the opposing party]." *Id.* (quoting *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987)). Where a party does not have responsive documents, it must come forward with an explanation of the search conducted "with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012). Information regarding the search conducted should be provided through declarations under oath detailing the nature of the efforts to locate responsive documents. *See Meeks v. Parsons*, No. 1:03-cv-6700-LJO-GSA, 2009 WL 3003718, at * 4 (E.D. Cal. Sept. 18, 2009) (citing *A. Farber & Partners*, 234 F.R.D. at 190).

In *Cooper Industries, Inc.v British Aerospace, Inc.* 102 F.R.D.918, 920 (S.D.N.Y. 1984), the court required the defendant to produce copies of documents in its affiliate corporation's possession. The fact that the documents were located in a foreign country was not a bar to discovery.

Suchard admits he is a fifty-percent owner of Sentro Israel, and one of two of its directors (Doc. # 133 at 2); however, he asserts Sentro Israel has appointed only one manager, Eliran Rosen, who allegedly dictates Sentro Israel's conduct. (*See id.* , stating that Sentro Israel is managed "<u>only</u> by Eliran Rosen, and whatever Eliran Rosen says 'goes' for Sentro Israel" (emphasis original).) To support his position, Suchard refers to a document previously submitted in connection with a status report filed earlier in the case (*i.e.*, Doc. # 114-1, Ex. A). This is a document that appears to have been printed on Sentro Israel's letterhead, and some of the text appears in English, while other portions appear to be in Hebrew. The pertinent portion of the document states in English that Rosen and Sentro Israel preclude Suchard from delivering any of its documents to third parties, and that Sentro Israel will sue Suchard if he provides any such information to EnvTech. (*See* Doc. # 114-1, Ex. A, Doc. # 133 at 2-3.)

Relying on this document, Suchard contends the documents requested by EnvTech are not under his control, and the only way these documents may be obtained is for EnvTech to file a lawsuit in Israel against Sentro Israel. (*Id*. at 3.)

Suchard presents an interesting argument with respect to these documents if in fact the company over which he should have certain dominion or control refuses to allow him to have access. However, the facsimile document purportedly from Eliran Rosen was not made under penalty of perjury, notarized, or verified in any other fashion.

Also missing from Suchard's opposition (or responses to discovery) is any indication that Suchard —as a fifty-percent  owner and director of Sentro Israel—has made formal demand or even any kind of request upon Sentro Israel and/or Rosen to make the documents available. At the very least, Suchard should have submitted a declaration outlining what good faith efforts he has undertaken as a director and officer of the company, and as defendant in this action, to secure the requested documents or to respond to the requested discovery.

EnvTech has submitted a declaration of an Israeli attorney who practices corporate law, who relying on Israeli Companies Law, which requires private companies to register basic corporate information, including the identity of their directors. (Doc. # 125-1 at 3 (Decl. of Pnina Broder Manor) ¶ 4.) An attorney in his firm obtained the report regarding Sentro Israel (attached as Ex. 1 his (original Hebrew) and Ex. 2 (English translation) to his decl., *see* Doc. # 125-1 at 3 ¶¶ 5-6.) The document identifies Suchard as a shareholder and director. (Doc. # 125-1 at 9.) According to this attorney, corporate governance in Israel is regulated primarily by the Companies Law, which gives the director of a company the right to inspect a company's documents and records, and to receive copies of such documents to the extent it is required to fulfill his duties as a director. (Decl. of Pnina Broder Manor at 3 ¶¶ 7-8 (citing Companies Law § 265).)

According to this declaration, Suchard, as a director of Sentro Israel, should theoretically have access to the documents requested by EnvTech, and the "Rosen directive" presented by Suchard is inconsistent with a director's rights under Israeli corporate law.

Suchard counters that Israeli law precludes a director from examining and copying documents "if the director is acting in other than good faith" or if "the examination might harm the best interests of the company." (Doc. # 133 at 6 (acknowledged by EnvTech, Doc. # 125 at 13).) He reasons that in view of the "Rosen Directive," if he were to produce the documents requested by

1    EnvTech, he would be acting "other than in good faith." (Doc. # 133 at 6.)

2           The court disagrees. Again, as a starting point, the "Rosen Directive" was not part of a

3    declaration submitted to the court under penalty of perjury, or verified in some other manner, to

4    certify its authenticity. Moreover, there is no evidence that Suchard has approached Sentro Israel and

5    explained that he seeks the requested documentation in response to discovery propounded in a

6    lawsuit pending in the United States, and that he does not seek the documents "other than in good

7    faith."

8           In addition, the court is concerned with the possibility of collusion between Suchard, Rosen,

9    and Sentro Israel. Given Sentro Israel's history in this litigation, and the allegations directed to

10   Suchard and Sentro Israel in this action, it seems too convenient for Sentro Israel to refuse to

11   participate in this litigation, and then for Suchard to avoid producing relevant documents that he

12   should theoretically have control over by claiming his fellow director has precluded the release of

13   any information. Paradoxically, when Suchard was asked in EnvTech's interrogatory number nine to

14   identify all persons who have performed services on behalf of Sentro Israel, in addition to asserting

15   various objections, he responds that information regarding services performed on behalf of Sentro

16   Israel can be obtained from Sentro Israel's operations/marketing departments, directing EnvTech to

17   contact Sentro Israel at its location in Tel Aviv. (Doc. # 125-3 at 13.)

18          It is inconsistent for Suchard, on the one hand, to advise EnvTech that Sentro Israel/Rosen

19   have precluded him from providing EnvTech with responsive documents and will go so far as to sue

20   Suchard (or any other worker or manager of Sentro, which would necessarily include Rosen himself)

21   if he provides EnvTech with any information about Sentro Israel, while on the other hand, directing

22   EnvTech to contact Sentro Israel to obtain the information.

23          Thus, Suchard's objection that he does not have control over the requested documents is

24   overruled because he has not yet made an adequate showing this is the case. To that end, he is

25   required to produce documents that he has in his possession that are not otherwise privileged, and

26   has up to and including **September 25, 2013**, to produce supplemental responses to the requests for

27   production of documents at issue. If he wishes to continue to assert that responsive documents exist

28

10

that are not within his control, he is required to set forth in a verified declaration attached to his discovery responses that he does not himself have access to documents responsive to EnvTech's requests, and shall also document efforts made to obtain the documents from Sentro Israel. Should EnvTech determine that his declaration is insufficient, it may bring a further motion to compel, at which point the court will make a determination whether the documents are within Suchard's control. Suchard is cautioned that unless he can demonstrate substantive, good faith efforts to secure the information from Sentro Israel, the court is not likely to favorably receive any explanation of futility.

### III. CONCLUSION

(1) Suchard's boilerplate objections that EnvTech's request for production numbers 8, 19, 25, 27, 31, 37, 41, 42, 49, 58 and 59 are vague, uncertain and not specific, and would pose an undue burden on Suchard and his counsel are **OVERRULED**.

(2) With respect to EnvTech's interrogatory numbers 9, 10 and 14:

(a) the objections that the interrogatories are not reasonably calculated to lead to the discovery of admissible evidence and pose an undue burden on Suchard and his counsel are **OVERRULED**;

(b) to the extent he has provided a substantive response to interrogatory number 9, that response is deemed insufficient and a further response must be provided on or before **September 25, 2013**;

(c) to the extent he has provided a substantive response to interrogatory number 10, that response is deemed to be sufficient;

(d) Suchard is required to provide a substantive response to interrogatory number 14 on or before **September 25, 2013**;

(e) Suchard is required to serve **verified responses** to interrogatories on or before **September 25, 2013.**

(3) With respect to his assertion of the objection that documents responsive to requests for production of documents numbers 8, 19, 25, 27, 31, 37, 41, 42, 49, 58 and 59:

1    (a) Suchard's objection that he does not have control over the requested documents is

2    **OVERRULED** because he has not yet made an adequate showing this is the case;

3    (b) to that end, he is required to produce documents that he has in his possession that are not

4    otherwise privileged, and has up to and including **September 25, 2013**, to produce supplemental

5    responses to the requests for production of documents at issue;

6    (c) If he wishes to continue to assert that responsive documents exist that are not within his

7    control, he is required to set forth in a verified declaration attached to his discovery responses that he

8    does not himself have access to documents responsive to EnvTech's requests, and shall also

9    document efforts made to obtain the documents from Sentro Israel. Should EnvTech determine that

10   his declaration is insufficient, it may bring a further motion to compel, at which point the court will

11   make a determination whether the documents are within Suchard's control. Suchard is cautioned that

12   unless he can demonstrate substantive, good faith efforts to secure the information from Sentro

13   Israel, the court is not likely to favorably receive any explanation of futility.

14   **IT IS SO ORDERED**.

15   **DATED:  September 11, 2013.**

16
William G. Cobb

17   United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

12